# TADD v. SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD COMPANY.

No. 2062. Decided January 21, 1910. (106 Pac. 943).

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE. In an action by a section hand for injuries received in a box car, from which he was unloading ties piled therein, by the fall of one of the ties on plaintiff's foot, evidence *held* not to show that the method adopted by the foreman of pulling the ties down from the pile with a pick was not reasonably safe. (Page 211.)

2. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—EVIDENCE. The fact that plaintiff's foreman was vexed and in a hurry, while engaged in pulling down ties froom the end of a box car for unloading, did not tend to prove negligence; it not appearing that he used more force than was necessary in pulling down the ties. (Page 211.)

3. MASTER AND SERVANT—ASSUMPTION OF RISK—OBVIOUS DANGER. The unloading of ties piled crosswise in one end of a box car requiring no special skill or experience, and the danger of the work being obvious to a section hand doing it, he assumed the risk of injury from ties falling upon him which were pulled down; especially where he admited that he fully understood the danger when the ties were pulled down. (Page 211.)

4. MASTER AND SERVANT—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE—SERVANT'S APPRECIATION OF DANGER. In a section hand's action for injuries by cross-ties falling upon him, which were being pulled down from the end of a box car for unloading, evidence *held* to show that plaintiff fully appreciated the danger to which he was exposed in doing the work. (Page 212.)

Appeal from District Court, Fourth District; *Hon. J. E. Booth, Judge.*

Action by Thomas Tadd against the San Pedro, Los Angeles & Salt Lake Railroad Company.

Judgment for plaintiff. Defendant appeals.

REVERSED.

*Pennel Cherrington, Dana T. Smith* and *W. E. Rydalch* for appellant.

*A. B. Morgan* and *Powers & Marioneaux* for respondent.

McCARTY, J.

Plaintiff brought this suit to recover damages for personal injuries alleged to have been sustained by him through the negligence of defendant. The answer denies the acts of negligence charged in the complaint, and alleges contributory negligence and assumption of risk upon the part of the plaintiff. A trial was had, which resulted in a verdict for the plaintiff in the sum of two thousand dollars. From the judgment entered on the verdict, defendant appeals.

Plaintiff was sworn as a witness in his own behalf and testified in substance: That on the afternoon of May 6, 1907, when he received the injury complained of, he was in the employ of defendant as a section hand, and had been so employed for several years prior thereto; that at about two o'clock on the afternoon in question, after having performed some other duties in the line of his employment, he joined his foreman, a Mr. Garrett, and another section hand by the name of Johns, who were unloading ties from a box car; that the north end of the car was filled to the door with ties, but to the south Garrett and Johns had removed a quantity of ties, leaving about eight feet of clear space in the car; that the ties were piled crosswise of the car, and in tiers eight feet high; that when he entered the car about half of the first tier of ties remaining therein had been removed; that in removing the remainder of this tier, consisting of about six or seven ties, Garrett, with the use of a pick, pulled them down one at a time as plaintiff and Johns shoved them out of the car; that Garrett then stuck his pick in the top of the next tier of ties and pulled them down; that when the ties fell they caught him (plaintiff) across the foot; that he got back into the southeast corner of the car, but could not keep out of the way of the falling ties because of the limited amount of clear space in the car.

On cross-examination plaintiff testified: "After we began unloading the ties it was two or three minutes before I was injured. In the first tier that was pulled down there were six or seven ties. It was only about half a tier. Garrett pulled them down and we threw them out. He stuck the pick in and pulled off the tier and Johns and I shoved them out through the door. Garrett pulled the next tier down with a pick. I knew he was going to do it. I understood that after we got through taking out the half tier of ties, we were to throw out some more after they were pulled down for us. Garrett pulled them down with the pick he used on the others and I got back as far as I could in the end of the car to get out of the way of the ties when they fell, because I knew that when he stuck his pick in and pulled them down they would fall. I got back as far as I could in the car because I was afraid they would hit me. Common sense would tell you why I got back."

Johns was called as a witness and testified in part, as follows: "When Tadd (plaintiff) got in the car there was eight or nine feet of clear space. I told Garrett not to use the pick, but he said he had taken down ties that way and never hurt anyone. I told him I was afraid of those ties coming down on us. I told him he was liable to get hurt. Garrett was in a big rush and hurry, and was vexed. The ties were water-soaked and would weigh one hundred and fifty pounds. We took out a half a tier of ties and then started on another tier. Before pulling them down Garrett said, 'Look out!' and I hollered to Tadd, 'Look out!' and the first thing I knew Tadd was caught. Garrett said 'Stand back boys!' and I got up on the ties (lying lengthwise of the car in the south end thereof), and was looking for the ties to fall, and the old man got back in the corner. It was maybe half a minute that elapsed before the ties fell on Tadd. The next thing I heard the old man groaning in the corner of the car. There was a tie lying on his foot and I threw it off. I remonstrated with Garrett about the way he was pulling the ties down in the presence of Tadd, and told

37 Utah—14

him it was dangerous. It was the second full tier that was pulled down after Tadd got in the car that fell on him. Both times Garrett warned us to get back."

Garrett was then called as a witness by defendant, and testified, in part, as follows: "The car was thirty-six feet long. The doors were six feet wide. While Tadd was working there the doors were entirely open on both east and west sides. There were six or seven ties in the first tier after Tadd came in. I pulled them down with the pick. . . . After that I went to another tier. . . . We unloaded that tier in the same way, and then pulled down another tier in the same way with the pick. . . . I saw the tie hit Tadd. It hit the floor first and then rolled towards me. I stepped over it and it passed me and on to Tadd's toe. When the ties were pulled down Mr. Johns stood on the end of a tie which was running lengthwise from the south end of the car. There were other ties projecting out and Tadd could have gotten on one of them."

The foregoing is, in substance, the evidence bearing upon the question of defendant's negligence, the alleged contributory negligence of plaintiff, and assumed risk. When the evidence was all in and both parties had rested, defendant asked the court to peremptorily instruct the jury to return a verdict in its favor. The refusal of the court to so instruct the jury is assigned as error.

Appellant contends that it was entitled to a directed verdict: First, on the ground that there was no evidence whatever that tended to show negligence on its part; and, second, that the evidence, without conflict, showed that whatever risks and dangers were involved in the unloading of the ties were open and obvious to plaintiff, and that he thereby assumed them.

The only particulars in which respondent claims that appellant was negligent are: First the way in which the tiers of ties were pulled down by Garrett; and, second, "the unreasonable haste and vexation" with which Garrett pulled them down. The only proof relied upon to show that the method by which the ties were pulled down by Garrett was

negligent was the opinion of Johns, that some other way of unloading them would be less dangerous. This, however, did not prove that the method adopted by appellant was not a reasonably safe one. Nor does the fact that Garrett was vexed and in a hurry tend to prove negligence. It is not claimed, nor does the evidence show, that Garrett, in pulling down the ties with his pick, used any more force than was necessary to bring them to the floor of the car, hence the testimony of Johns that Garrett was vexed and was rushing the work did not prove, nor did it tend to prove, any issue in the case. The evidence, when taken and considered in the light most favorable to respondent, wholly fails to establish negligence on the part of appellant. We are also of the opinion that a verdict should have been directed for appellant on the ground that respondent assumed the risks and dangers to which he was exposed. The unloading of the ties was a work which required no special knowledge, skill, or experience on the part of those engaged in it. And the risks and dangers of the employment were as open and obvious to respondent as they were to appellant, and they were of such a character that any man of ordinary intelligence could not help but appreciate and understand them. And the evidence in this case affirmatively and conclusive shows that respondent understood and fully appreciated the very element of danger that caused his injury. Johns, in the presence of respondent, remonstrated with Garrett about the way in which he was pulling down the ties and told him that it was dangerous, and that he (Garrett) was liable to get hurt. When Garrett was in the act of pulling down the ties he said to respondent and Johns, "Stand back, boys!" and Johns also shouted to respondent to "Look out!" That respondent fully realized and appreciated the danger to which he was exposed is conclusively shown by his own evidence, wherein he said "I got back as far as I could in the end of the car to get out of the way of the ties when they fell, because I knew that when he (Garrett) stuck the pick in and pulled them down they would fall. I got back as far as I could

in the car because I was afraid they would hit me. Common sense would tell you why I got back." According to the facts as thus detailed by himself, respondent, under all the authorities, assumed the very risk and element of danger that caused the injury upon which he bases his right to recover.

The judgment is reversed. Costs of this appeal to be taxed against respondent.

STRAUP, C. J., and FRICK, J., concur.